UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MARK PLAMBECK, | ) | 1:08-cv-01092-SMS |
| | ) | |
| Plaintiff, | ) | DECISION AND ORDER DENYING |
| v. | ) | PLAINTIFF'S SOCIAL SECURITY |
| | ) | COMPLAINT (DOC. 1) |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | ORDER DIRECTING THE ENTRY OF |
| SECURITY, | ) | JUDGMENT FOR DEFENDANT MICHAEL J. |
| | ) | ASTRUE, COMMISSIONER OF SOCIAL |
| Defendant. | ) | SECURITY, AND AGAINST PLAINTIFF |
| | ) | MARK PLAMBECK |
| | ) | |

Plaintiff is proceeding in forma pauperis and with counsel with an action seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying Plaintiff's application of August 11, 2005, for Supplemental Security Income benefits in which he had claimed to have been disabled since January 1, 2004,[1] due to anti-social, schizophrenic, paranoid personality; depression; and anxiety. (A.R. 331, 339.) The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §

---

[1] Originally Plaintiff identified January 1, 1991, as the date his disability commenced, but he subsequently amended the date. (A.R. 18, 340, 344.)

636(c)(1), and pursuant to the order of Judge Anthony W. Ishii filed August 27, 2008, the matter has been assigned to the Magistrate Judge to conduct all further proceedings in this case, including entry of final judgment.

The decision under review is that of Social Security Administration (SSA) Administrative Law Judge (ALJ) Christopher Larsen, dated September 26, 2007 (A.R. 18-24), rendered after a hearing held August 27, 2007, at which Plaintiff appeared and testified with the assistance of counsel (A.R. 18, 524-55). The Appeals Council denied Plaintiff's request for review on April 11, 2008 (A.R. 10-12), and thereafter Plaintiff filed his complaint in this Court on July 25, 2008. Briefing commenced on February 27, 2009, and was completed with the filing of Plaintiff's reply on April 13, 2009. The matter has been submitted without oral argument to the undersigned Magistrate Judge.

I. Standard and Scope of Review

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a preponderance, Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

2

1 <u>Richardson</u>, 402 U.S. at 401. The Court must consider the record

2 as a whole, weighing both the evidence that supports and the

3 evidence that detracts from the Commissioner's conclusion; it may

4 not simply isolate a portion of evidence that supports the

5 decision. <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir.

6 2006); <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).

7 It is immaterial that the evidence would support a finding

8 contrary to that reached by the Commissioner; the determination

9 of the Commissioner as to a factual matter will stand if

10 supported by substantial evidence because it is the

11 Commissioner's job, and not the Court's, to resolve conflicts in

12 the evidence. <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 (9th

13 Cir. 1975).

14         In weighing the evidence and making findings, the

15 Commissioner must apply the proper legal standards. <u>Burkhart v.</u>

16 <u>Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must

17 review the whole record and uphold the Commissioner's

18 determination that the claimant is not disabled if the

19 Commissioner applied the proper legal standards, and if the

20 Commissioner's findings are supported by substantial evidence.

21 <u>See,</u> <u>Sanchez v. Secretary of Health and Human Services</u>, 812 F.2d

22 509, 510 (9th Cir. 1987); <u>Jones v. Heckler</u>, 760 F.2d at 995. If

23 the Court concludes that the ALJ did not use the proper legal

24 standard, the matter will be remanded to permit application of

25 the appropriate standard. <u>Cooper v. Bowen</u>, 885 F.2d 557, 561 (9th

26 Cir. 1987).

27 /////

28                                3

1    II. <u>Disability</u>

2        A. <u>Legal Standards</u>

3        In order to qualify for benefits, a claimant must establish
4  that she is unable to engage in substantial gainful activity due
5  to a medically determinable physical or mental impairment which
6  has lasted or can be expected to last for a continuous period of
7  not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A
8  claimant must demonstrate a physical or mental impairment of such
9  severity that the claimant is not only unable to do the
10 claimant's previous work, but cannot, considering age, education,
11 and work experience, engage in any other kind of substantial
12 gainful work which exists in the national economy. 42 U.S.C.
13 1382c(a)(3)(B); <u>Quang Van Han v. Bowen</u>, 882 F.2d 1453, 1456 (9th
14 Cir. 1989). The burden of establishing a disability is initially
15 on the claimant, who must prove that the claimant is unable to
16 return to his or her former type of work; the burden then shifts
17 to the Commissioner to identify other jobs that the claimant is
18 capable of performing considering the claimant's residual
19 functional capacity, as well as her age, education and last
20 fifteen years of work experience. <u>Terry v. Sullivan</u>, 903 F.2d
21 1273, 1275 (9th Cir. 1990).

22       The regulations provide that the ALJ must make specific
23 sequential determinations in the process of evaluating a
24 disability: 1) whether the applicant engaged in substantial
25 gainful activity since the alleged date of the onset of the
26 impairment, 2) whether solely on the basis of the medical
27 evidence the claimed impairment is severe, that is, of a

28                                   4

magnitude sufficient to limit significantly the individual's physical or mental ability to do basic work activities; 3) whether solely on the basis of medical evidence the impairment equals or exceeds in severity certain impairments described in Appendix I of the regulations; 4) whether the applicant has sufficient residual functional capacity, defined as what an individual can still do despite limitations, to perform the applicant's past work; and 5) whether on the basis of the applicant's age, education, work experience, and residual functional capacity, the applicant can perform any other gainful and substantial work within the economy. See 20 C.F.R. § 416.920.

B. Findings

The ALJ found that Plaintiff had severe impairments of depressive disorder, psychotic disorder, not otherwise specified, and an antisocial disorder. (A.R. 20.) However, Plaintiff had no impairment or combination thereof that met or medically equaled a listed impairment, and he had a residual functional capacity (RFC) to perform a full range of work at all exertional levels, and could understand, remember, and carry out simple one-step or two-step job instructions with limited contact with the general public. (A.R. 21.) Although Plaintiff, who was born on August 15, 1957, and was forty-eight years old on the date he applied for benefits, had no past relevant work, the ALJ considered the testimony of a vocational expert (VE) and concluded that in light of Plaintiff's high school education, work experience, residual functional capacity, and ability to communicate in English, Plaintiff could perform jobs that existed in significant numbers

1  in the national economy, including industrial cleaner, with

2  117,076 unskilled positions in California, and about nine times

3  as many in the United States, including sweeper-cleaner, DOT

4  389.683-010; laborer, with 55,436 jobs in California and about

5  nine times that many in the United States, including battery

6  stacker, DOT 727.687-030; and hand packer, with 16,073 jobs in

7  California and about nine times as many in the United States,

8  including hand packer, DOT 920.587018. (A.R. 23-24.) Thus, under

9  the framework of Medical-Vocational Guideline 204.00, Plaintiff

10 was not under a disability within the meaning of the Social

11 Security Act (Act) since August 11, 2005, the date he filed his

12 application. (A.R. 18.)

13      III. <u>Treatment of State Agency Medical Consultant's Opinion</u>

14      Plaintiff asserts that state agency medical consultant Dr.

15 A. Middleton, Ph.D., was the only doctor who diagnosed Plaintiff

16 with a personality disorder, and that the ALJ adopted that

17 diagnosis; however, the ALJ apparently failed to adopt Dr.

18 Middleton's opinion that Plaintiff had moderate impairments in

19 the ability to interact with the general public or to get along

20 with coworkers, supervisors, or peers without distracting them or

21 exhibiting behavioral extremes, and thus that Plaintiff had to

22 have only limited close contact with coworkers and the public. In

23 stating Plaintiff's RFC, the ALJ limited Plaintiff to limited

24 contact with the general public but did not impose a limit on his

25 contact with coworkers. Plaintiff argues that the ALJ failed to

26 state adequate reasons for discounting the state agency

27 physician's opinion, and specifically the limitation on contact

28                                    6

1  with coworkers, and further that the RFC found by the ALJ lacked

2  the support of substantial evidence because the limitations

3  adopted were imposed by a doctor who did not diagnose a

4  personality disorder.

5       A. <u>Legal Standards</u>

6       An ALJ may disregard a treating physician's opinion that is

7  controverted by other opinions only by setting forth specific,

8  legitimate reasons for doing so that are based on substantial

9  evidence in the record. <u>Rodriguez v. Bowen</u>, 876 F.2d 759, 762 (9th

10  Cir. 1989). This burden is met by stating a detailed and thorough

11  summary of the facts and conflicting clinical evidence, stating

12  the interpretation of the evidence, and making findings. <u>Cotton</u>

13  <u>v. Bowen</u>, 799 F.2d 1403, 1408 (9th Cir 1986). However, if the

14  medical opinion of a claimant's treating physician is

15  uncontroverted, then an ALJ must present clear and convincing

16  specific reasons, supported by substantial evidence in the

17  record, for rejecting the uncontroverted medical opinion of a

18  claimant's treating physician. <u>Holohan v. Massanari</u>, 246 F.3d

19  1195, 1203 (9th Cir. 2001). A failure to set forth a reasoned

20  rationale for disregarding a particular treating physician's

21  findings is legal error. <u>Cotton v. Bowen</u>, 799 F.2d at 1408.

22       The medical opinion of a nontreating doctor may be relied

23  upon instead of that of a treating physician only if the ALJ

24  provides specific and legitimate reasons supported by substantial

25  evidence in the record. <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1202

26  (9th Cir. 2001) (citing <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th

27  Cir. 1995)). The contradictory opinion of a nontreating but

28                                    7

examining physician constitutes substantial evidence, and may be relied upon instead of that of a treating physician, where it is based on independent clinical findings that differ from those of the treating physician. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). The opinion of a nontreating, nonexamining physician can amount to substantial evidence as long as it is supported by other evidence in the record, such as the opinions of other examining and consulting physicians, which are in turn based on independent clinical findings. Andrews v. Shalala, 53 F.3d at 1041.

With respect to disability determinations, various factors are pertinent to evaluating expert opinions:

> By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians. See 20 C.F.R. § 404.1527. If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." Id. § 404.1527(d)(2). If a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the Administration considers specified factors in determining the weight it will be given. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. Id. §  404.1527(d)(2)(i)-(ii). Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians. Id. § 404.1527(d)(1)-(2). Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician

8

providing the opinion; and "[o]ther factors" such as the degree of understanding a physician has of the Administration's "disability programs and their evidentiary requirements" and the degree of his or her familiarity with other information in the case record. Id. § 404.1527(d)(3)-(6).

Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007).

With respect to proceedings under Title XVI, the Court notes that an identical regulation has been promulgated. See, 20 C.F.R. § 416.927.

B. Background

The ALJ set forth a relatively detailed review of the evidence concerning Plaintiff's mental impairments.

In identifying the severe impairments of Plaintiff, the ALJ relied on various opinions.

In concluding that Plaintiff had a depressive disorder, the ALJ relied on a parole evaluation performed on January 31, 2005, by Hugh Jones, L.C.S.W., a psychiatric social worker at a parole outpatient clinic which Plaintiff visited as a condition of his parole. (A.R. 20, 422-23.) Jones ruled out schizophrenia (A.R. 422), but he opined that Plaintiff had a major depressive disorder, recurrent, in partial remission; and polysubstance dependence (Plaintiff had been arrested in 1986 for using crank, and he had used cocaine, marijuana, speed, and heroin, and had admitted that he had been using speed and cocaine just prior to his arrest). (A.R. 422.) Jones also diagnosed antisocial personality disorder with narcissistic traits with psycho-social stressors of adjustment to non-prison environment and not returning to criminal activity. (Id. at 422-23.) Jones noted that

Plaintiff had depressed mood; he claimed to have audio hallucinations, but there was no evidence of them at the time of the evaluation. Memory and cognition were intact, judgment and insight were impaired, and Plaintiff was oriented with clear and intact thought process. (Id.) Jones assigned a GAF of 68.[2]

In concluding that Plaintiff had a severe impairment of a psychotic disorder, not otherwise specified, the ALJ relied on the opinion of Dr. Ekram Michiel, a psychiatrist who evaluated Plaintiff on October 7, 2005, in the course of a psychiatric evaluation undertaken at the request of the DSS, and who had previously evaluated Plaintiff in April 2003 for the department. (A.R. 20, 426-29, 215-18.) Plaintiff complained of feeling sad and hearing voices, which came and went; he did not listen to them, but they tried to persuade him to do bad things. He also stated he saw shadows and felt things touching him. (A.R. 426.) He claimed not to tolerate people, who caused him to get nervous and angry, to stay away from people, and to suffer disrupted sleep because the shadows sometimes made him scared. (Id.) He had no psychiatric hospitalization in his history and was under the care of parole mental health, who prescribed his medication, which included Bupropion, HCL, and Seroquel. (A.R. 426.) He

_____

[2] A GAF, or global assessment of functioning, is a report of a clinician's judgment of the individual's overall level of functioning that is used to plan treatment and to measure the impact of treatment as well as to predict its outcome. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders at 32 (4th ed., text revision) (DSM-IV-TR). A GAF of 68 indicates a person with some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but who is generally functioning pretty well and has some meaningful interpersonal relationships. Id. at 34.

graduated from high school and was imprisoned for twenty years, last having been released in August 2005. He completed activities of daily living on his own and attended Fresno City College three days a week.

With respect to Dr. Michiel's mental status exam, Plaintiff's attitude and behavior were normal; he was oriented in intellectual functioning and could recall three out of three objects in five minutes. His insight and judgment were intact, his thought process was goal-directed, and there was no evidence of any distraction or response to internal stimuli during the interview. Plaintiff's mood was depressed and affect restricted. (A.R. 428.)

On Axis I, Dr. Michiel diagnosed psychotic disorder, not otherwise specified, and deferred diagnoses on Axis II, with stressors being social condition; the GAF was 65. (A.R. 428.)

Dr. Michiel opined that Plaintiff was able to maintain attention and concentration and to carry out one or two-step simple job instructions but was unable to carry out technical and/or complex instructions; he could relate and interact appropriately with coworkers, supervisors, and the general public. (A.R. 428.)

In concluding that Plaintiff had an antisocial disorder, the ALJ cited to an opinion rendered in a clinical mental health assessment performed by a Frederic W. Lee, L.M.F.T., on December 29, 2004, at First Step Outreach of the Turning Point from the Fresno County Mental Health Plan, at a time when Plaintiff was homeless. (A.R. 20, 496, 496-503.) Lee noted significant

1  impairment in living arrangement and social support due to
2  Plaintiff's homelessness and lack of a positive social support
3  system; Lee also noted significant impairment in daily activities
4  because Plaintiff lacked "organized daily activities and
5  exercise." (A.R. 498.) Plaintiff complained of mild anger,
6  anxiety, and fatigue; moderate feelings of hopelessness, sleep
7  disturbance, and isolation or social withdrawal; and mild to
8  moderate hallucinations/delusions. (A.R. 498.) The plan was to
9  encourage Plaintiff to initiate and increase his social and
10 recreational activities with others within the treatment program
11 and the community, and to comply with all prescribed medications,
12 discontinue use of caffeinated products, and engage in a
13 medically approved exercise program. His prognosis was good.
14 (A.R. 498.) Lee noted appropriate affect, no hyperactivity or
15 traumatic stress, adequate cognitive performance, and good
16 health. (A.R. 496.) Plaintiff had a moderate to severe problem
17 with depression for over a year, anxiety, a slight to moderate
18 problem with hallucinations, and severe to extreme problems with
19 work and school, where he had been expelled or terminated and was
20 not employed, and with stealing, in which he had been involved
21 for some twenty years. He was not a danger to himself or others.
22 (A.R. 496.) Lee diagnosed Plaintiff with Axis I, major depressive
23 disorder with psychotic features, and Axis II, antisocial
24 personality disorder, with a then-current GAF of 53. (A.R. 496.)[3]

25
26      [3] Dr. Xavier Lara, M.D., assessed Plaintiff on December 3, 2004 (A.R. 414), and concluded that at Axis I,
   Plaintiff had a mood disorder not otherwise specified, rule out dysthymic disorder, rule out bipolar disorder; on Axis
   II, Plaintiff had antisocial traits; current GAF was in the 80's. (A.R. 414.) Dr. Lara opined that Plaintiff needed to be
27 involved in a rehabilitation program, and to continue with the parole doctor's instructions for medications.

28

1    The ALJ considered the severity of Plaintiff's mental
2  impairments in connection with determining that Plaintiff's
3  impairments did not meet or medically equal listed impairments,
4  namely, Listings 12.03 (schizophrenic, paranoid, and other
5  psychotic disorders), 12.04 (affective disorders), and 12.08
6  (personality disorders). (A.R. 20.) He specifically found that
7  Plaintiff was not restricted in activities of daily living based
8  on Plaintiff's own reports of a variety of daily activities.
9  (A.R. 20-21.)

10    The ALJ further found that Plaintiff had only mild
11  difficulties in social functioning. (A.R. 21.) The ALJ noted
12  Plaintiff's statements in his function reports of April 2006 and
13  August 2005, in which Plaintiff indicated he had problems getting
14  along with others and had an antisocial personality. (A.R. 21
15  [citing to A.R. 369, 391].) However, the ALJ noted substantial
16  evidence in the record that reflected that in mental status exams
17  that took place in and about March 2003, December 2004, and
18  January and October 2005, Plaintiff's GAF was stated to be
19  between 65 and 80. (A.R. 21, 414, 423, 425, 428, 497.) The ALJ
20  reasoned that according to the DSM-IV-TR, a GAF of 61 through 70
21  indicates only mild symptoms in social, occupational, or school
22  functioning, and a GAF of 71 to 80 indicates no more than a
23  slight impairment in social, occupational, or school functioning.
24  (A.R. 21.)

25    This is a correct observation. As noted above, a GAF of 61
26  through 70 indicates a person with some mild symptoms (e.g.,
27  depressed mood and mild insomnia) or some difficulty in social,

28                                13

occupational, or school functioning (e.g., occasional truancy, or theft within the household), but who is generally functioning pretty well and has some meaningful interpersonal relationships. American Psychiatric Association, <u>Diagnostic and Statistical Manual of Mental Disorders</u> at 34 (4th ed., text revision) (DSM-IV-TR). <u>Id.</u> at 34. A GAF of 71 through 80 indicates that if symptoms are present, they are transient and expectable reactions to psycho-social stressors (e.g., difficulty concentrating after family argument); and no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork). DSM-TR at 34. A GAF of 81 through 90 indicates absent or minimal symptoms (e.g., mild anxiety before an exam), good functioning in all areas, interested and involved in a wide range of activities, socially effective, generally satisfied with life, and no more than everyday problems or concerns (e.g., an occasional argument with family members). DSM-TR at 34.

Finally, the ALJ concluded that with respect to concentration, persistence, or pace, Plaintiff, who claimed an inability to concentrate for more than an hour and one-half and to have problems with concentration and memory, had mild difficulties because he was taking eight units at Fresno City College and was considered to be very intelligent and looking for free handouts whenever available by his parole officer. (A.R. 21.)

The ALJ then specifically concluded that the "paragraph B" criteria regarding severity were not satisfied because of the

14

absence of at least two marked limitations or one marked

limitation and repeated episodes of decompensation; he further

noted the opinions of Dr. Michiel in April 2003 and October 2005

to the effect that Plaintiff could maintain attention and

concentration sufficient to carry out one-step and two-step,

simple job instructions. (A.R. 21.) The ALJ continued:

> The limitations identified in the "paragraph B" criteria
> are not a residual functional capacity assessment, but
> are used to rate the severity of mental impairments
> at steps 2 and 3 of the sequential evaluation. The
> mental residual functional capacity assessment used
> at steps 4 and 5 of the sequential evaluation process
> requires a more detailed assessment by itemizing
> various functions contained in the broad categories
> found in paragraph B of the adult mental disorders
> listings in 12.00 of the Listing of Impairments
> (SSR 96-8p). Accordingly, I have translated the
> above "B" criteria findings into work-related functions
> in the residual functional capacity assessment
> below.

(A.R. 21.)

The ALJ's analysis of Plaintiff's RFC included a rejection

of Plaintiff's subjective complaints of inability to work because

of psychosis, dizziness, inability to read, poor memory, visual

hallucinations, lack of sleep with Elavil, suicidal thoughts, and

lack of motivation. (A.R. 22.) In the course of the analysis, the

ALJ detailed 1) the mild findings of the professional exam

undertaken at the parole outpatient clinic in March 2003

(slightly flat affect, depressed and anxious mood, poor eye

contact and arrogant attitude), the diagnosis previously noted,

and the GAF of 68 (A.R. 22, 424-25); 2) the referral in February

2006 of Plaintiff by Plaintiff's parole agent to Westcare

Rehabilitation for long-term residential drug and alcohol,

15

employment, and mental health counseling, and the following discharge of Plaintiff from the program less than a month later because Plaintiff was unable to attend school if he remained in the program (A.R. 22, 505, 508-09); and 3) the opinion of Dr. Michiel, the consulting, examining psychiatrist who had examined Plaintiff in October 2005 as well as earlier in April 2003, to the effect that Plaintiff, who claimed to be nervous and angry around people, exhibited an essentially normal mental status exam with the exception of a depressed mood and restricted affect with reports of auditory and visual hallucinations, and had a psychotic disorder, not otherwise specified, with a GAF of 65 (A.R. 22, 426-29, 215-18 (60 to 65 in 2003). Dr. Michiel specifically found in April 2003 and October 2005 that Plaintiff was able to maintain adequate attention and concentration and to carry out one-step or two-step simple job instructions but not an extensive variety of technical and/or complex instructions; further, he was able to relate and interact appropriately with coworkers, supervisors, and the general public. (A.R. 218, 428.) The ALJ then concluded:

> Weighing all the relevant factors, I find Mr. Plambeck's mental impairments are not as severe as he alleges for the reasons discussed above.

(A.R. 23.) The ALJ thus discounted the extent of Plaintiff's claimed subjective limitations.[4]

---

[4] The ALJ properly considered factors such as Plaintiff's daily activities, whether his treatment was conservative, and lack of objective medical findings. See A.R. at 16-17; Soc. Sec. Ruling 96-7p and 20 C.F.R. §§ 404.1525c(4)(1)(viii), 416.929(c)(4)(1)(vii); Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d at 346 (9th Cir. 1991). In support of his findings concerning Plaintiff's credibility, the ALJ

After addressing the severity of Plaintiff's impairments and the evaluation of Plaintiff's subjective complaints, the ALJ's decision concerning Plaintiff's RFC then continued with the following concerning the opinion evidence:

> As for the opinion evidence, the state-agency medical consultants concluded Mr. Plambeck is moderately limited in his ability to interact appropriately with the public and get along with coworkers or peers without distracting them (Exhibit B-7F, pp. 2-3). Consultative psychiatrist Dr. Michiel concluded Mr. Plambeck can maintain attention and concentration and carry out one or two step simple job instructions (Exhibit B-5F, p. 3). I give more weight to Dr. Michiel's medical opinion as an examining source. Furthermore, none of the social workers, psychiatrists, or psychologists who evaluated Mr. Plambeck precluded him from working because of his mental impairments.

(A.R. 23.)

C. <u>Analysis</u>

The ALJ appropriately gave greater weight to the opinion of an examining physician than to the state agency physicians with respect to the extent of Plaintiff's ability to get along with and interact appropriately with coworkers, peers, and the public.

Substantial evidence supports the ALJ's reasoning concerning the functionality attributed to Plaintiff by the medical sources. In the RFC assessment, Dr. Middleton found no functional limitations in understanding and memory, sustained concentration and persistence, social interaction, and adaptation, with the exception of moderate limitations of the ability to interact appropriately with the general public and of the ability to get along with coworkers or peers without distracting them or

articulated clear and convincing reasons supported by substantial evidence.

exhibiting behavioral extremes. Dr. Middleton elaborated that Plaintiff was capable of performing detailed directions; Middleton stated without further explanation, "Limited close contact with coworkers and the public," and specified that Plaintiff was capable of adapting to the usual changes of a work setting. (A.R 458-60.)

On October 16, 2006, a psychiatric review technique completed by A.R. Garcia revealed an assessment that Plaintiff had impairments that were not severe, including schizophrenic, paranoid and other psychotic disorders, and substance addiction disorders. (A.R. 485.)

With respect to diagnoses, the ALJ here adverted to several opinions, which were not identical. However, the ALJ adopted the diagnoses of the treating sources, Jones and Lee, concerning major depressive disorder and anti-social personality disorder, respectively; he relied on Dr. Michiel with respect to a psychotic disorder. (A.R. 20.) This did not constitute a rejection of Dr. Michiel's opinion as to an anti-social or personality disorder because Dr. Michiel did not make a contrary diagnosis; he merely deferred diagnosis as to Axis II. (A.R. 428, 217.) No error is claimed with respect to this portion of the decision.

The ALJ adverted to the opinion of the state agency medical consultant, A. Middleton, Ph.D., expressed in the mental residual functional capacity assessment of Plaintiff dated November 17, 2005. (A.R. 23, 458-60.) The ALJ then explained that less weight was being put on the state agency consultants' opinion of

moderate limitations because Dr. Michiel, the consulting physician, had examined Plaintiff, and his opinion concerning Plaintiff's various functionalities was consistent with those of the social workers, psychiatrists, and psychologists who had evaluated Plaintiff, none of whom had precluded Plaintiff from working because of his mental impairments. (A.R. 23.) The ALJ noted that Dr. Michiel had concluded that Plaintiff could maintain attention and concentration. (A.R. 23.) The ALJ also relied on the fact that Dr. Michiel was an examining source, whereas the state agency physician had not examined Plaintiff. (A.R. 23.)

The ALJ appropriately relied on Dr. Michiel's examination and on the overall consistency of the evaluating sources's opinions concerning Plaintiff's ability to work with Dr. Michiel's opinion. Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians. Id. § 404.1527(d)(1)-(2). Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and "[o]ther factors" such as the degree of understanding a physician has of the Administration's "disability programs and their evidentiary requirements" and the degree of his or her

familiarity with other information in the case record. 20 C.F.R.
sec. 416.927(d); <u>Orn v. Astrue</u>, 495 F.3d 625, 631 (9th Cir. 2007).

Here, given the fact that the experts and evaluators were
operating in the field of treatment of mental illness, it is
reasonable in the special circumstances of this case to
anticipate that the professionals to whom the ALJ referred,
namely, social workers, psychiatrists, and psychologists, would
all naturally and logically have been expected to have been
concerned with Plaintiff's functionality and ability to work, and
they would have noted any limitation of Plaintiff's abilities had
it been observed. Thus, the absence of any opinion is a specific
and legitimate reason in the context of the present case.

The ALJ's reasoning concerning Plaintiff's subjective
complaints covered inconsistently mild findings during
examinations, Plaintiff's inconsistent daily activities of
studying at the community college level, and his choice of school
over counseling. It is significant that the inability to get
along with peers/coworkers, the matter that lies at the heart of
Plaintiff's argument, is contradicted by the factors so important
to the ALJ, including Plaintiff's success at school and the
relative unimportance of treatment for his mental impairments in
Plaintiff's plan of recovery or rehabilitation.

In summary, the Court concludes that the ALJ adverted to the
significant evidence and stated specific, legitimate reasons for
weighing the opinions in question. Substantial evidence supports
the ALJ's conclusions.

The fact that Dr. Michiel did not specifically diagnose an

antisocial personality or personality disorder does not undermine the support that Dr. Michiel's opinion of Plaintiff's functionality otherwise gives to the ALJ's conclusion concerning Plaintiff's RFC.

First, as a general principle, it is not necessary to agree with everything an expert witness says in order to hold that his testimony contains substantial evidence, where the bases for the opinion were supported by objective medical evidence. Magallanes Bowen, 881 F.2d 747, 753 (9th Cir. 1989).

Further, the Court notes that Dr. Michiel did not rule out an antisocial personality or personality disorder; rather, he simply deferred diagnosis on Axis II. It does not appear that the absence of an affirmative diagnosis by Dr. Michiel significantly undercuts his opinion about Plaintiff's ability to interact appropriately with others, including peers, coworkers, and the public. Dr. Michiel examined Plaintiff twice. He took a detailed history and reviewed medical records. (A.R. 426.) He performed a complete mental status examination and recorded detailed findings in his report, matters which the ALJ expressly found worthy of great weight.

Further, it is noteworthy that Dr. Middleton's own psychiatric review technique, dated the same day as his RFC assessment, reflects that Dr. Middleton assessed and endorsed the necessity of an RFC assessment based on various medical categories, including schizophrenic, paranoid and other psychotic disorders, and specifically, psychotic features and deterioration, a medically determinable impairment of psychosis

not otherwise specified. (A.R. 461, 463.) Dr. Middleton did <u>not</u>
assess an affective disorder (A.R. 464), an anxiety-related
disorder (A.R. 466), or a personality disorder (A.R. 468).
Further, the functional limitations assessed revealed only mild
difficulties in maintaining social functioning and maintaining
concentration, persistence, or pace. (A.R. 471.)

In summary, the Court concludes that the ALJ stated legally
sufficient reasons, supported by substantial evidence, for
crediting the opinion of Dr. Michiel.

The Court is mindful of the fundamental limitation of
review operative in this case, namely, that this Court is limited
to reviewing the findings of the ALJ and to reviewing the
specific facts and reasons that the ALJ asserts. <u>Connett v.
Barnhart</u>, 340 F.3d 871, 874 (9th Cir. 2003). With respect to
significant, probative evidence, such as an expert opinion, an
ALJ must explicitly reject the opinion and set forth specific
reasons of the requisite force for doing so. <u>Nguyen v. Chater</u>,
100 F.3d 1462, 1464 (9th Cir. 1996). The district court cannot
make findings for the ALJ. <u>Id.</u> A district court cannot affirm the
judgment of an agency on a ground the agency did not invoke in
making its decision. <u>Pinto v. Massanari</u>, 249 F.3d 840, 847-48 (9th
Cir. 2001). The authorities thus reflect the fundamental
principle that the ALJ's opinion must contain sufficient findings
to permit intelligent judicial review, particularly with respect
to significant probative evidence. <u>Vincent v. Heckler</u>, 739 F.2d
1393, 1395 (9th Cir. 1984).

Based on is review, the court concludes that the decision

1  before the Court adequately states the ALJ's reasoning with
2  respect to the pertinent opinions.

3      IV. <u>Disposition</u>

4      Based on the foregoing analysis, the Court concludes that
5  the ALJ's decision was supported by substantial evidence in the
6  record as a whole and was based on the application of correct
7  legal standards.

8      Accordingly, the Court AFFIRMS the administrative decision
9  of the Defendant Commissioner of Social Security and DENIES
10 Plaintiff's Social Security complaint.

11     The Clerk of the Court IS DIRECTED to enter judgment for
12 Defendant Michael J. Astrue, Commissioner of Social Security,
13 and against Plaintiff Mark Plambeck.

14

15 IT IS SO ORDERED.

16 **Dated:   August 14, 2009**          **/s/ Sandra M. Snyder**
17                                UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28                        23